UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MARTIN MATURINE,                                    MEMORANDUM DECISION
                                                         AND ORDER
                              Plaintiff,            04 CV 9064 (GBD)

                  -against-

AMERICAN INTERNATIONAL GROUP, INC.,
AMERICAN INTERNATIONAL GROUP
TECHNICAL SERVICES, INC., & THOMAS
MICHAELS,

                              Defendants.
----------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

        Plaintiff, an African-American, commenced this employment discrimination action

against his employers, defendants American International Group, Inc. and American International

Group Technical Services, Inc. (collectively "AIG"), and against an AIG employee, defendant

Thomas Michaels, in both his individual capacity and in his official capacity as an agent of AIG.

AIG moved, pursuant to Fed.R.Civ.P. 56, for summary judgment.[1]  Defendant Thomas Michaels

also moved for summary judgment dismissing the claims asserted against him.[2]  The motions are

granted.  The Court declines to exercise supplemental jurisdiction over Michaels' state law

counterclaims.  Accordingly, the complaint and defendant Michaels' counterclaims are

dismissed.

---

        [1]  The complaint sets forth five causes of action against defendants: (1) discrimination
and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.; (2)
discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981; (3) discrimination and
retaliation under the New York State Executive Law, 15 N.Y. Exec. Law §§ 291 *et seq*.; (4)
discrimination and retaliation under the New York City Human Rights Law; and (5) negligent
infliction of emotional distress.

        [2]  Defendant Michaels has asserted state law counterclaims against plaintiff, namely:
assault and battery; defamation; intentional infliction of emotional distress, and *prima facie* tort.

AIG terminated plaintiff's employment after he was involved in a physical altercation with Michaels, who at the time plaintiff did not know was an AIG employee.  The incident occurred not at the workplace itself, but on the street while the two men were walking to work in the morning.  For several months preceding the altercation, Michaels, who is Caucasian, allegedly verbally harassed plaintiff with racial slurs and threats during his commute to and from the workplace.  After interviewing both plaintiff and Michaels about the physical altercation, AIG determined that plaintiff's actions warranted his termination.  Plaintiff maintains that his employer did not afford him an opportunity to explain the circumstances surrounding the altercation and failed to take steps to investigate and cure plaintiff's claims of prior harassment. Plaintiff contends that AIG simply credited Michaels' version of the encounter, instead of plaintiff's.

The fight occurred on April 21, 2004, after plaintiff allegedly had been subjected to several months of verbal harassment by Michaels while the two commuted to their respective workplaces.  Although plaintiff did not begin his employment with AIG until March 29, 2004, plaintiff claims that, beginning in October of 2003, Michaels began to harass him.  Plaintiff maintains that after he started his employment with AIG, Michaels' harassment increased in that, during their commutes, Michaels would make racial slurs to plaintiff approximately every other day.  None of the alleged objectionable acts took place on AIG premises or during work-related events, nor did they occur during business hours.

Plaintiff acknowledged that, throughout his employment with AIG, he never experienced any racial harassment at work.  He knew that AIG had an established policy forbidding discriminatory harassment.  Prior to their physical altercation, plaintiff never reported Michaels'

2

alleged harassment to AIG because he knew Michaels only as a fellow commuter.  Plaintiff was

employed by defendant American International Group Technical Services, Inc., and he was

unaware that defendant Michaels worked for a separate AIG subsidiary.  The two men did not

work in the same office building, nor did they ever work on the same project.  Michaels had no

supervisory role over plaintiff.  Plaintiff only became aware that Michaels was an AIG employee

following the physical altercation.  As plaintiff explained, "I didn't even know who the man was,

where he lived, who he worked for.  All I knew is that he harassed me."  (Pl.'s Dep. at 22).

The altercation occurred while plaintiff was walking to work from the ferry.  Plaintiff

contends that Michaels ran toward him and yelled a racial slur at him.  When Michaels allegedly

brushed up against plaintiff's arm, Plaintiff claims he used an open hand against Michaels' face

to push him away, causing Michaels to fall to the ground.  Plaintiff maintains that his actions

were motivated by a need to protect himself.[3]  Plaintiff indicated that he reacted to Michaels'

alleged harassment in this public setting differently than had it occurred at the workplace.

Plaintiff testified:

> First of all, if there is a close proximity of a co-worker in a work environment that
> is harassing me, I would not let it get to [the] point [of physically pushing him.]  I
> would immediately . . . handle matters through the appropriate corporate channels;
> but . . . [Michaels' harassment] was not anything remotely related to AIG's
> involvement at the time that this happened.  (Id. at 123).

After the altercation, plaintiff proceeded to work.  A passerby called 9-1-1, and the police

and paramedics arrived at the scene of the altercation.  Michaels advised the police that he

---

[3]  Michaels, however, testified that plaintiff approached him from behind and forcefully
punched him in the face with a closed fist.  Michaels claims he fell to the ground and lost
consciousness.  Michaels testified that he suffered a swollen nose and had facial cuts and bruises,
including a split lip.  For purposes of the summary judgment motions, the factual circumstances
of the physical altercation need not be resolved.

wished to press charges.  Michaels accompanied the police officers inside the building where plaintiff worked, and identified plaintiff as the person who struck him.  Both Michaels and plaintiff were escorted by the police downstairs to separate AIG security rooms.  While in the room, Michaels explained to AIG security officers what transpired.

Plaintiff explained to an AIG security officer that Michaels had been harassing him for "over a nine-month period," and that he had acted in self-defense during the morning scuffle. (Id. at 130-32).  Plaintiff told the security officer that Michaels had attempted to harm him and "struck" him, thereby forcing plaintiff to defend himself.  (Id. at 131-32). Plaintiff testified that the security officer was not paying attention to what he was telling him or giving any credence to his account of the events.  Plaintiff was arrested by the police and handcuffed at the workplace. He was charged with felony assault, but subsequently pled guilty to disorderly conduct.  Plaintiff does not contend that AIG urged the police to arrest plaintiff, or that the arrest itself was discriminatorily motivated.

Michaels was subsequently treated for his injuries at AIG's medical facility.  An AIG human resources employee saw Michaels at the facility, and was present during his interview with AIG security.  She sent an e-mail to the AIG Vice President for Human Resources indicating that "[i]t looks like [Michaels] got whacked pretty good."  (AIG's Mem. Ex. 17).

The decision, by the Human Resources Vice President, to fire plaintiff was based on a number of factors.  One was Michaels' physical condition after the altercation.  The Vice President was told that Michaels was bloody, his eyeglasses were broken, and his pants were ripped.   Another consideration was AIG's workplace violence policy that deals with threats in the workplace.  Although the physical altercation did not occur on AIG premises, the Vice

4

President nevertheless believed that plaintiff's conduct posed a threat to AIG employees.  The final consideration was the investigation into the incident by AIG security which included affording both plaintiff and Michaels an opportunity to speak with an AIG security officer.  The Vice President was advised that, during this interview, plaintiff did not "seem" to provide "any acceptable explanation for why [the altercation occurred]."  (Ross Dep. at 43).  The Vice President testified that she "was comfortable that [plaintiff] was really the one who assaulted Mr. Michaels."  (Id. at 58).  The Vice President did not know that plaintiff was African-American prior to making her decision to discharge plaintiff.  She has supervised AIG's Human Resources Department for over twelve years, and is unaware of any other African-American employee who was discharged for either engaging in or threatening violence.[4]

On June 22nd, the day following the physical altercation, AIG's Chief Security Officer spoke with plaintiff on the telephone.  Plaintiff told the officer that he did not know that Michaels was an AIG employee, and that Michaels had been harassing him and attempting to intimidate him for a long period of time.  In response, the security officer informed plaintiff that "we have looked at . . . both sides" of the incident.  (AIG's Mem. Ex. 7 at 4).  He informed plaintiff that after having a number of discussions with AIG Human Resources and employee relations personnel, AIG was terminating plaintiff's employment effective as of the close of business yesterday.  The security officer did not give plaintiff a specific reason for his termination, but rather indicated that "it was based upon what had happened the day before . . ."

---

[4]  The Vice President "recall[s] several instances where employees, who are Caucasian, have been discharged for either assaulting another employee or threatening physical harm to another employee."  (Ross Decl. ¶ 2).  The record fails to disclose the factual circumstances surrounding these other incidents, and accordingly there is no basis to infer whether or not the white employees fired by AIG were similarly situated to plaintiff.

(Mahaffey Dep. at 40).  The officer "presumed" plaintiff knew he "was calling about the assault incident," as plaintiff did not "ask for clarification."  (Id. at 127).

Following the termination of his employment, plaintiff came to believe that his discharge was discriminatorily motivated.  His belief is premised on the manner in which AIG handled the matter.  Specifically, plaintiff focuses on the fact that he "was fired without a reason involving a situation that occurred on the street, brought on the premises of the company by a white employee, who [plaintiff] later found out was an employee, and his word was taken over [plaintiff's]."  (Pl.'s Dep. at 39).

Plaintiff also alleges that AIG retaliated against him, after his discharge, for reporting Michaels' harassment to AIG and for filing a complaint with the Equal Employment Opportunity Commission.  Plaintiff believes that AIG reported his arrest to the Consumer Services Bureau of the New York Department of Insurance in an effort to have plaintiff's license revoked and to prevent him from obtaining future employment.  Plaintiff acknowledged that he has no evidence that any of the defendants did indeed make such a report.  Plaintiff nevertheless believes it is logical to assume that AIG made the report because AIG was his employer, was a party to his arrest and termination, and was the only party, other than Michaels, who had knowledge of the incident.  Plaintiff, however, is unaware of any prospective employers, with whom he interviewed, who actually knew that an official report was made.  Nevertheless, he thinks they must have learned of the report because none of them contacted him after the interviews.

## SUMMARY JUDGMENT

Summary judgment, pursuant to Fed.R.Civ.P. 56, is warranted where there are no genuine

issues of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P.

56(c).  A genuine issue for trial exists if, based on the record as a whole, a reasonable trier of fact

could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242

(1986).  The burden to show that there are no genuine issues of fact rests with the party seeking

summary judgment.  Anderson, 477 U.S. at 256; Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d

Cir. 1995), *abrogated on other grounds by* Burlington Indust., Inc. v. Ellerth, 524 U.S. 742

(1998).  "When deciding a summary judgment motion, a trial court's function is not to weigh the

evidence, make credibility determinations or resolve issues of fact, but rather to determine

whether drawing all reasonable inferences from the evidence presented in favor of the non-

moving party, a fair-minded jury could find in the non-moving party's favor."  Beatie v. City of

New York, 123 F.3d 707, 710 (2d Cir. 1997) (internal citation omitted); see also, Dawson v.

County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (*quoting* Weyant v. Okst, 101 F.3d

845, 854 (2d Cir. 1996)).  The weighing of evidence and the assessment of credibility are matters

that lie exclusively within the province of the finder of fact, not the Court.  Hayes v. New York

City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (*citing* United States v. Rem, 38 F.3d 634,

644 (2d Cir. 1994)).

  Plaintiff has filed no opposition papers to defendant's summary judgment motions.[5]

--------

[5] The Court granted plaintiff's application to extend his time to respond to the summary judgment motions until May 10, 2006.  On May 10th, rather than filing opposition papers, plaintiff filed a motion for a continuance.  By Memorandum Decision and Order dated August 14, 2006, plaintiff's Rule 56(f) motion, filed by his attorneys, for a continuance to conduct further discovery was denied.  Maturine v. Am. Int'l Group, Inc., 2006 WL 2347806 (S.D.N.Y. Aug. 14, 2006).  The discovery cut-off date had been extended on three previous occasions. Although the August 14, 2006 motion was denied, the Court, nevertheless, afforded plaintiff a further opportunity, until September 8, 2006, to file a response to defendants' motions.  Plaintiff has not filed any additional papers.

Plaintiff's failure to file any formal opposition papers has no bearing on the determination of whether summary judgment in favor of the defendants is warranted.  "If the evidence submitted in support of the summary judgment motion[s] does not meet the movant[s'] burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (emphasis in original) (*quoting* Giannulo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003)); see also, Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006) ("'[T]hat the facts are undisputed does not automatically mandate summary judgment; rather, summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion.'") (alterations in original) (*quoting* Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 438 (2d Cir. 1999)).

Summary judgment is available "'even in the fact-intensive context of discrimination cases.'"  Schiano, 445 F.3d at 608 (*quoting* Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.2001)).  However, resolution of such motions require "[a]n extra measure of caution" because direct evidence of discrimination is rare.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (citations omitted).  Summary judgment is appropriate where no genuine issue of material fact exists, and plaintiff merely offers conclusory allegations of discrimination. Schiano, 445 F.3d at 608; Holtz, 258 F.3d at 69; Schwapp v. Town of Avon, 118 F.3d 106, 100 (2d Cir. 1997).

## DISCRIMINATORY DISCHARGE

In analyzing discrimination claims, courts follow the three-part evidentiary framework set

out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny.[6] <u>Heyman v.</u>

<u>Queens Vill. Comm. For Mental Health for Jamaica Cmty. Adolescent Program, Inc.</u>, 198 F.3d

68, 72 (2d Cir. 1999).  Under the <u>McDonnell</u> framework, a plaintiff must initially establish, by a

preponderance of the evidence, a prima facie case of discrimination.  The burden to prove a

prima facie case of discrimination is a modest one.  <u>Patterson v. County of Oneida</u>, 375 F.3d 206,

221 (2d Cir. 2004);  <u>Woroski v. Nashua Corp.</u>, 31 F.3d 105, 109 (2d Cir. 1994).  If plaintiff

makes such a showing, the burden of proof shifts to defendants to articulate a legitimate, non-

discriminatory reason for plaintiff's dismissal.  If the employer articulates a legitimate, non-

discriminatory reason for its action, the presumption of discrimination disappears and "the

employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that

reasonably supports a finding of prohibited discrimination."  <u>James v. New York Racing Ass'n</u>,

233 F.3d 149, 154 (2d Cir. 2000).  "Plaintiff must [ ] offer some evidence, such as the falsity of

[the employer's] stated legitimate reason, from which one may infer the ultimate fact of

discrimination."  <u>Ferraro</u>, 440 F.3d at 100.

    For plaintiff to make out a prima facie case in an action for discriminatory discharge,

plaintiff must establish: (1) his membership in a protected class; (2) that he satisfactorily

performed his job; (3) that he was discharged; (4) and that the discharged occurred under

circumstances giving rise to an inference of discrimination.  <u>Graham v. Long Island R.R.</u>, 230

---

[6] The same legal standards apply to employment discrimination and related retaliation claims brought under Title VII, § 1981, the New York State Executive Law, and the New York City Human Rights Law.  <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 149, 151 (2d Cir. 2006); <u>Ferraro v. Kellwood Co.</u>, 440 F.3d 96, 99 (2d Cir. 2006); <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 217 (2d Cir. 2005); <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 n.1 (2d Cir. 2000); <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 565 n.1 (2d Cir. 2000); <u>Choudhury v. Polytechnic Inst. of New York</u>, 735 F.2d 38, 44 (2d Cir. 1984).

F.3d 34, 38 (2d Cir. 2000).  Plaintiff has failed to satisfy the fourth criterion, and hence has not

made out a prima facie case of discrimination.  Plaintiff's argues that AIG denied him the same

terms, conditions, and privileges of employment as other AIG employees when AIG terminated

plaintiff for being involved in the physical alteration.   Specifically, plaintiff contends that AIG

provided Michaels, a white employee, an opportunity to explain what occurred and denied

plaintiff, an African-American, a similar opportunity.  Plaintiff claims that "AIG's decision to

terminate [him] because Michaels's story was more credible is a mere pretext for discrimination,

as AIG never interviewed [plaintiff], a black employee."  (Faillace Aff. Supp. Pl.'s Continuance

Mot. ¶ 4).

   Although plaintiff contends that, prior to his termination, he was never afforded an

opportunity to explain his version of the events, his deposition testimony reveals otherwise.

Plaintiff testified that, on the day of the incident, he advised an AIG security officer that

Michaels had been harassing him for more than nine months.  With regard to the altercation,

plaintiff explained to the officer that Michaels was the initial aggressor.  Plaintiff said that

Michael had attempted to harm him, and that Michaels struck plaintiff, thereby forcing plaintiff

to defend himself.  Plaintiff complains that his words fell on deaf ears as the officer did not find

him to be credible.  Merely because plaintiff believes that his account of the incident should have

been deemed credible does not alter the fact that, like Michaels, plaintiff was given an

opportunity to provide AIG with his version of the events.

   To withstand a motion for summary judgment, plaintiff must adduce facts or

circumstances giving rise to an inference of discrimination.  "The inference of discrimination

may be shown by direct evidence, statistical evidence, or circumstantial evidence . . ."  Taggart v.

<u>Time Inc</u>., 924 F.2d 43, 46 (2d Cir. 1991).  According to plaintiff, "[t]he gravamen of the complaint is that AIG denied Plaintiff the same terms, conditions, and privileges of employment as other AIG employees who were involved in physical altercations."  (Faillace Aff. Supp. Pl.'s Continuance Mot. ¶ 4).  An inference of discrimination may arise by evidence that the employer treated plaintiff less favorably than similarly situated persons outside of plaintiff's protected class.  <u>Graham v. Long Island R.R.</u>, 230 F.3d at 40 (citations omitted).   However, the record is barren of any evidence that AIG treated a non-African-American employee, who engaged in or threatened a fellow employee with violence, more favorably than plaintiff.  Plaintiff merely indicates that AIG did not terminate Michaels' employment even though he too was involved in the physical altercation.  AIG concluded that Michaels was the victim of plaintiff's unprovoked assault.  Only plaintiff was arrested by the police for assault.  AIG found that only plaintiff posed a threat to other employees.  There is simply no evidence of disparate treatment or any other evidence or factual circumstances tending to give rise to an inference of discrimination.  Since plaintiff has failed to make even the minimal showing of a prima facie case of discrimination, the burden of proof does not shift to AIG.

However, even if plaintiff were able to make a prima facie showing, AIG has met its burden of demonstrating a legitimate, non-discriminatory reason for plaintiff's termination.  The record supports AIG's claim that plaintiff was discharged because it believed that plaintiff had unjustifiably assaulted Michaels, and that such aggressive conduct indicated that plaintiff posed a threat to the safety of fellow employees in contravention of the company's anti-violence policy.  An employer, who has a good faith belief that plaintiff has committed wrongdoing, has a legitimate right to terminate his employment.  <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 169

(2d Cir. 2001) (Finding the employer's good faith belief that an employee engaged in work-related fraud was a legitimate non-discriminatory reason to terminate the employee regardless of whether or not the fraud actually occurred.).

Plaintiff contends that AIG's reason to terminate him, based on a finding that Michaels' version of the events was more credible, is only a pretext for discrimination since AIG "terminated [plaintiff] without allowing him to explain that Michaels had threatened and attacked him, and that he had only acted in self-defense." (Compl. ¶ 40).  However, the record indicates that plaintiff was given an opportunity to explain to AIG what had transpired.  Although plaintiff believes that AIG's determination that plaintiff was the initial aggressor was erroneous, that does not suggest that AIG's proffered reason is a pretext for discrimination.  An employer's decision to fire an employee may be unwise, unreasonable, or wrong, but that is not a valid basis from which to conclude that the proffered reason is pretextual.  DeMarco v. Holy Cross High Sch., 4 F.3d 166, 170-71 (2d Cir. 1993).  It is not the Court's role to second-guess an employer's non-discriminatory business decisions, question the manner in which it conducts its internal investigations, make an independent determination as to whether the plaintiff committed the subject misconduct, or determine whether the employer's actions were justified.  See, Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988); Brierly v. Deer Park Union Free Sch. Dist., 359 F.Supp.2d 275, 291 (E.D.N.Y. 2005) Ascione v. Pfizer, Inc., 312 F.Supp.2d 572, 578 (S.D.N.Y. 2004) (citations omitted), aff'd, 138 Fed.Appx. 374 (2d Cir. 2005); Arguenta v. N. Shore Long Island Jewish Health Sys., Inc., 2003 WL 22670915, at *9 (E.D.N.Y. Nov. 6, 2003). Even if it were shown that plaintiff did not in fact commit the misconduct for which he was fired, that alone does not suggest that the reason for his discharge was pretextual.  See eg. Henry v.

Daytop Vill., Inc., 42 F.3d 89, 96 (2d Cir. 1994) (Noting that "[w]hether or not [plaintiff] was actually guilty of any misconduct has no bearing on the resolution of [the] disparate treatment claim: the court must consider only whether [plaintiff] has sufficiently established a pattern of disparate treatment based on race or gender, from which a rational factfinder could infer unlawful discriminatory animus on the part of [the employer].").

It is not sufficient to argue that AIG performed a shoddy or deficient investigation which resulted in a poorly informed decision to fire plaintiff.  Rather, it is incumbent upon plaintiff to proffer evidence that the manner in which the investigation was conducted and the resulting decision to terminate him was discriminatorily motivated.  See, Jordan v. Olsten Corp., 111 F.Supp.2d 227, 236 (W.D.N.Y. 2000), aff'd, 25 Fed.Appx. 45 (2d Cir. 2001).  The only basis upon which plaintiff seeks to make such a showing is by his conclusory assertion that AIG gave credit to Michaels' account of the physical altercation because Michaels is white.  Plaintiff has failed to adduce any evidence that AIG's investigation was tainted by racial prejudice.  Even if AIG was wrong in finding Michaels to be credible, it does not vitiate the legitimate reason proffered by AIG.  See eg., Arguenta, 2003 WL 22670915, at *5; Minton v. Lenox Hill Hosp., 160 F.Supp.2d 687, 696 (S.D.N.Y. 2001) (citation omitted).

There is no evidence or legitimate inference that race played a part in the decision as to whom to credit.  There has been no showing that AIG has ever engaged in any discriminatory practice.  In fact, plaintiff acknowledges that he never suffered any discrimination at the workplace, and it was only after his termination, that he came to believe that his firing was discriminatorily motivated.  The evidence reveals that AIG had a good faith belief that plaintiff initiated the assault, and that such conduct violated the company's policy against workplace

violence thereby posing a danger to other employees.  In fact, plaintiff's conduct resulted in

criminal prosecution and his guilty plea to disorderly conduct.  Accordingly, AIG is entitled to

summary judgment on the discrimination claims for wrongful termination.  See eg., Cruz, 202

F.3d at 568 (No showing of pretext where employer rejected employee's claim of self-defense

and fired her for violating company's no-assault rule.); Stokes v. Gen. Mills, Inc., 754 F.Supp.

312, 316 (W.D.N.Y. 1991) (Finding plaintiff's argument that he was acting in self-defense was

immaterial to issue of whether his termination was discriminatorily motivated, but rather the

relevant issue was whether after the employer determined plaintiff engaged in misconduct, it

unevenly applied its policy against plaintiff.).[7]


## RETALIATION

Summary judgment in favor of all the defendants is also warranted with regard to the

retaliation causes of action.  There is no evidence in the record to support plaintiff's "belief" that

any of the defendants retaliated against him by reporting his arrest to the New York Department

of Insurance.  Furthermore, plaintiff has proffered no evidence to support his claim that he has

---

[7] Since Title VII does not impose liability against individuals, this claim must be
dismissed against Michaels.  Patterson, 375 F.3d at 221; Tomka, 66 F.3d at 1304, 1313-17.
Dismissal of the other discrimination claims against Michaels is also warranted.  Michaels cannot
be held liable in his individual capacity because he had no supervisory control over plaintiff, he
lacked any authority to fire plaintiff, and he had no control as to how AIG conducted the
investigation.  See generally, Tomka, 66 F.3d at 1317; Patane v. Clark, 435 F.Supp.2d 306, 312
(S.D.N.Y. 2006); Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP, 332 F.Supp.2d
592, 596-98 (S.D.N.Y. 2004).  Additionally, since there is no evidence that AIG discriminated,
there is no predicate for imposing liability on Michaels under an aiding and abetting theory.  See,
Patane, 435 F.Supp.2d at 314; Drummond v. IPC Int'l, Inc., 400 F.Supp.2d 521, 535 (E.D.N.Y.
2005); Yerry v. Pizza Hut of Southeast Kansas, 186 F.Supp.2d 178, 187 (N.D.N.Y. 2002)
(quoting Falbaum v. Pomerantz, 19 Fed.Appx. 10, 15 (2d Cir. 2001)) DeWitt v. Lieberman, 48
F.Supp.2d 280, 293 (S.D.N.Y. 1999).

been prejudiced in his ability to secure employment because prospective employers must have

learned of his arrest due to defendants' actions.  In support of this contention, plaintiff relies

solely on the fact that he was never contacted by prospective employers after interviewing with

them.  Plaintiff's conclusory allegation that defendants must have made the subject report, and

that such a report has impaired his ability to obtain employment, is an insufficient supposition to

withstand summary judgment.  See, Sarno v. Douglas Eliman-Gibbons & Ives, Inc., 183 F.3d

155, 160 (2d Cir. 1999); Frontline Commc'n Int'l, Inc. v. Sprint Commc'n Co., 374 F.Supp.2d

368, 371-72 (S.D.N.Y. 2005); Hamilton v. Bally of Switzerland, 2005 WL 1162450, at *12

(S.D.N.Y. Apr. 17, 2005).


## CONCLUSION

Plaintiff cannot prevail on any of his federal, state or local causes of action.[8]  Defendants'

motions for summary judgment are granted and the complaint is dismissed.[9]  The Court declines

to exercise supplemental jurisdiction over defendant Michaels' state law counterclaims, and

---

[8]  Plaintiff's remaining cause of action for negligent infliction of emotional harm must
also be dismissed.  Plaintiff is precluded, by the New York Worker's Compensation Law, from
maintaining this claim against AIG.  Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997); Arroyo
v. WesLB Admin., Inc., 54 F.Supp.2d 224, 232 (S.D.N.Y. 1999), aff'd, 213 F.3d 625 (2d Cir.
2000).  Notwithstanding this procedural bar, the claim must be dismissed on its merits because
the employment of Michaels did not impose, upon AIG, a legal duty to the public at large for any
off-hours conduct by Michaels.  See D'Amico v. Christine, 524 N.Y.S.2d 1, 6-7 (N.Y. 1987);
Abdullaheva v. Club Quarters, Inc., 1996 WL 497029, at *9 (S.D.N.Y. Sept. 3, 1996).  Plaintiff
has similarly failed to identify any special duty owing to him by defendant Michaels to support
such a claim against Michaels.  One's general duty to obey the law is insufficient.  See, Mortise
v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (citations omitted); Abdullaheva, 1996 WL
497029, at *9.

[9]  Since all of plaintiff's claims share the same factual and legal underpinnings, judicial
economy warranted the Court retaining supplemental jurisdiction over plaintiff's state and local
causes of action.

accordingly they are dismissed without prejudice.  See, 28 U.S.C. § 1367(c).  The Clerk of the

Court is directed to close this matter.


Dated: New York, New York
        November 6, 2006


                                 SO ORDERED:


                                 _George B. Daniel_____
                                 GEORGE B. DANIELS
                                 United States District Judge

16